## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------

| | |
|---|---|
| Weaver Leather, LLC<br>7540 CR 201<br>P. O. Box 68<br>Mount Hope, Ohio 44460 ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | C.A. No. _____ |
| Climbing Innovations, LLC ) c/o Pennsylvania Business ) Systems, LLC ) 600 Eagleview Blvd., Suite 300 ) Exton, PA 19341 ) ) | COMPLAINT<br><br>JURY TRIAL DEMANDED |
| and ) ) | |
| Richard Mumford ) 6328 Cedarcrest Road ) Acworth, Georgia 30101 ) | |
| Defendants. ) | |

------------------------------------------------------------------

## COMPLAINT FOR PATENT INFRINGEMENT

For its Complaint for patent infringement against Defendants Climbing Innovations, LLC ("Climbing Innovations") and Richard Mumford ("Mumford"), Plaintiff Weaver Leather, LLC ("Weaver Leather") states and avers as follows:

### PRELIMINARY STATEMENT

1.     This is an action for infringement of United States Patent No. 9,352,190 (the "'190 Patent") arising under the provisions of the Patent Act, 35 U.S.C. § 1, *et. seq.* particularly 35 U.S.C. § 271, based on Defendants' unauthorized commercial manufacture, use, importation, offer for sale, and sale of knee ascender assemblies for use in the tree climbing industry.

### THE PARTIES

2.      Weaver Leather is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 7540 CR 201, Mt. Hope, Ohio.

3.      Weaver Leather is in the business of crafting quality products designed for use with tree climbing, among other things.

4.      Upon information and belief, Climbing Innovations is a limited liability company organized and existing under the laws of the State of Pennsylvania, and may be served through Pennsylvania Business Systems, LLC located at 600 Eagleview Blvd., Suite 300, Exton, PA 19341.

5.      Upon information and belief, Mumford is the owner and operator of Climbing Innovations.

6.      Upon information and belief, Mumford is an individual who resides in Georgia at 6328 Cedarcrest Road, Acworth, Georgia 30101 and does business under the name Climbing Innovations.

7.      Upon information and belief, Defendants offer various climbing products on their website, http://climbinginnovations.com/, and on Amazon.com.

### JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, Title 35 United States Code. This Court has exclusive original jurisdiction over the subject matter of this case pursuant to 35 U.S.C. §271, *et seq*, and 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendants because Climbing Innovations is a limited liability company organized under the laws of the State of Pennsylvania with its principal place of business in this district.

2

10.     Venue is proper in this district under 28 U.S.C. §1400(b) because Climbing Innovations resides in this district, and the Defendants have committed acts of patent infringement in this district.

### THE ASSERTED PATENT

11.     The '190 Patent, entitled "Knee Ascender Assembly for Rope Climbing," was duly and legally issued on May 31, 2016, and names Michael Allen Frankhauser as the inventor. A true and correct copy of the '190 Patent is attached as Exhibit A and incorporated by reference.

12.     The '190 Patent claims, among other things, an apparatus for use in rope climbing including an elastic cord, a load bearing member, an ascender secured to the load bearing member adjacent to an aperture and a foot attachment depending from the load bearing member.

13.     Weaver Leather is the sole assignee of the right, title, and interest in the '190 Patent. A true and correct copy of the Assignment abstract of title for the '190 Patent is attached as Exhibit B and incorporated by reference.

14.     Weaver leather sells products that are marked in accordance with 35 U.S.C. §287 as covered by the '190 Patent.

15.     Upon information and belief, Defendants make, import, sell and offer for sale goods for use in rope climbing which include an elastic cord, a load bearing member, an ascender secured to the load bearing member adjacent to an aperture and a foot attachment depending from the load bearing member.

### THE INFRINGING ACTIVITIES AND PRODUCT

16.     Upon information and belief, Defendants have and continue to make, use, import, sell, and/or offer to sell a product known as the "Self Advancing Knee Ascender" or "S.A.K.A."

(collectively referred to as the "Accused Product") which Defendants promote and advertise as being designed to be the fastest, lightest, most efficient and responsive knee ascender on the market.

17.     The Accused Product is currently available for purchase at Defendants' website https://climbing-innovations.myshopify.com/products/saka. A screenshot from January 9, 2018 is attached as Exhibit C and incorporated by reference.

18.     The Accused Product embodies or uses the invention claimed in the '190 Patent.

19.     The Accused Product constitutes a material part of the invention as disclosed in the '190 Patent.

20.     On or about October 25, 2017, counsel for Weaver Leather sent correspondence to Defendants informing Defendants of the '190 Patent. A copy of this correspondence is attached as Exhibit D and incorporated by reference.

21.     Counsel for the parties exchanged additional correspondence responsive to the October 25, 2017 correspondence, however they were unable to reach an agreement as to infringement of the '190 patent by Defendants.

**INFRINGEMENT OF THE '190 PATENT**

22.     Weaver Leather incorporates and realleges the averments contained in Paragraphs 1 through 21 of its Complaint, as if fully set forth herein.

23.     The '190 Patent is valid and enforceable.

24.     Upon information and belief, Defendants have been and are directly infringing the '190 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Product that embodies or

4

uses the invention claimed in the '190 Patent including those sold under the name SELF ADVANCING KNEE ASCENDER AND S.A.K.A., in violation of 35 U.S.C. § 271(a).

25. Claim 1 of the '190 Patent grants Weaver Leather the exclusive right to make, use, sell, offer for sale, or import "[a]n apparatus for use in rope climbing comprising: an elastic cord having a fixed end and a free end defining a length; a load bearing member having a hollow core open at an aperture, wherein the fixed end of the elastic cord is secured relative to the load bearing member, an interior portion of the length of the elastic cord extends from the fixed end through the hollow core to the aperture, and an exterior portion of the length of the elastic cord extends through the aperture to the free end external to the load bearing member; an ascender secured to the load bearing member adjacent to the aperture; and a foot attachment depending from the load bearing member."

26. As to claim 1 of the '190 Patent, on information and belief:

a. The Accused Product is, either literally or under the doctrine of equivalents, an apparatus for use in rope climbing.

b. The Accused Product, either literally or under the doctrine of equivalents, has an elastic cord having a fixed end and a free end defining a length.

c. The Accused Product, either literally or under the doctrine of equivalents, has a load bearing member having a hollow core open at an aperture.

d. The Accused Product, either literally or under the doctrine of equivalents, has a fixed end of the elastic cord secured relative to the load bearing member.

e. The Accused Product, either literally or under the doctrine of equivalents, has an interior portion of the length of the elastic cord extending from the fixed end through the hollow core to the aperture.

f.      The Accused Product, either literally or under the doctrine of equivalents, has an exterior portion of the length of the elastic cord extending through the aperture to the free end external to the load bearing member.

g.      The Accused Product, either literally or under the doctrine of equivalents, has an ascender secured to the load bearing member adjacent to the aperture.

h.      The Accused Product, either literally or under the doctrine of equivalents, has a foot attachment depending from the load bearing member.

27.     Defendants directly infringe at least Claim 1 of the '190 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, the Accused Product.

28.     Claim 12 of the '190 Patent states "[a]n apparatus for use in rope climbing comprising: an elastic cord having a fixed end and a free end defining a length; a liner comprising an upper end and a lower end and defining a cavity having an interior diameter, wherein the fixed end of the elastic cord is secured at the lower end of the liner, an interior portion of the length of the elastic cord extends from the fixed end through the liner to the upper end, and an exterior portion of the length of the elastic cord extends through the upper end to the free end external to the liner; a load bearing member having an aperture and encasing the liner such that the upper end of the liner is positioned in the aperture; an ascender secured to the load bearing member adjacent to the aperture; and a foot attachment depending from the load bearing member."

29.     As to claim 12 of the '190 Patent, on information and belief:

a.      The Accused Product, either literally or under the doctrine of equivalents, is an apparatus for use in rope climbing.

b.      The Accused Product, either literally or under the doctrine of equivalents, has an elastic cord having a fixed end and a free end defining a length.

c.      The Accused Product, either literally or under the doctrine of equivalents, has a liner comprising an upper end and a lower end and defining a cavity having an interior diameter.

d.      The Accused Product, either literally or under the doctrine of equivalents, has a fixed end of the elastic cord secured at the lower end of the liner.

e.      The Accused Product, either literally or under the doctrine of equivalents, has an interior portion of the length of the elastic cord extending from the fixed end through the liner to the upper end.

f.      The Accused Product, either literally or under the doctrine of equivalents, has an interior portion of the length of the elastic cord extending from the fixed end through the liner to the upper end.

g.      The Accused Product, either literally or under the doctrine of equivalents, has an exterior portion of the length of the elastic cord extending through the upper end to the free end external to the liner.

h.      The Accused Product, either literally or under the doctrine of equivalents, has a load bearing member having an aperture and encasing the liner such that the upper end of the liner is positioned in the aperture.

i.      The Accused Product, either literally or under the doctrine of equivalents, has an ascender secured to the load bearing member adjacent to the aperture.

j.      The Accused Product, either literally or under the doctrine of equivalents, has a foot attachment depending from the load bearing member.

30.     Defendants directly infringe at least Claim 12 of the '190 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, the Accused Product.

31.     Defendants had prior knowledge of the '190 Patent based at least upon Weaver Leather's patent notice letter of October 25, 2017, Exhibit D.

32.     Defendants have known of the existence of the '190 Patent, and their acts of infringement have been willful and in disregard for the '190 Patent, without any reasonable basis for believing that they had the right to engage in the infringing conduct.

33.     Defendants were aware of the '190 Patent and knew that the Accused Product may be covered by a claim of the '190 Patent or may satisfy a claim of the '190 Patent under the doctrine of equivalents.

34.     Defendants' infringement has been, and continues to be knowing, intentional, and willful.

35.     Defendants' acts of infringement of the '190 Patent have caused and will continue to cause Weaver Leather immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

36.     Weaver Leather has no adequate remedy at law.

37.     Defendants' acts of infringement of the '190 Patent have caused and will continue to cause Weaver Leather damages for which Weaver Leather is entitled to compensation pursuant to 35 U.S.C. § 284.

38.     This case is exceptional and, therefore, Weaver Leather is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**WHEREFORE**, Weaver Leather requests judgment against Defendants as follows:

a.      Adjudging Defendants to have infringed the '190 Patent, in violation of 35 U.S.C. § 271(a);

b.      Granting an injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '190 Patent;

c.      Ordering Defendants to account and pay damages adequate to compensate Weaver Leather for Defendants' infringement of the '190 Patent, with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

d.      Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

e.      Declaring this case exceptional and awarding Weaver Leather its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285; and

f.      Awarding Weaver Leather such other legal or equitable relief to which it is entitled.

Dated: January 18, 2018

_____
Kevin R. Casey (PA ID No. 58083)
Corey S. D. Norcross (PA ID No. 316909)
Stradley Ronon Stevens & Young, LLP
A Pennsylvania Limited Liability Partnership
30 Valley Stream Parkway
Malvern, PA 19355
Tel: 610.640.5800
Fax: 610.640.1965
Email: kcasey@stradley.com
Email: cnorcross@stradley.com

9

James F. McCarthy (OH#0002245)
Howard L. Wernow (OH#0089019)
Laura L. Beoglos (OH#0059152)
SAND & SEBOLT, LPA
4940 Munson Street NW, Suite 1100
Canton, OH 44718
Phone: 330-244-1174
Fax: 330-244-1173
Email: jmccarthy@katzteller.com
Email: HowardW@sandandsebolt.com
Email: LauraB@sandandsebolt.com

*Pro Hac Vice to be filed*


*Attorneys for Plaintiff Weaver Leather, LLC*

# EXHIBIT A



US009352190B2

(12) **United States Patent**

Frankhauser

(10) **Patent No.:** **US 9,352,190 B2**

(45) **Date of Patent:** **May 31, 2016**

(54) **KNEE ASCENDER ASSEMBLY FOR ROPE CLIMBING**

(71) Applicant: **Michael Allen Frankhauser**, Galloway, OH (US)

(72) Inventor: **Michael Allen Frankhauser**, Galloway, OH (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/717,535**

(22) Filed: **May 20, 2015**

(65) **Prior Publication Data**

US 2015/0251057 A1 Sep. 10, 2015

**Related U.S. Application Data**

(63) Continuation of application No. PCT/US2014/037000, filed on May 6, 2014.

(60) Provisional application No. 61/820,006, filed on May 6, 2013.

(51) **Int. Cl.**
| | |
|---|---|
| *A63B 27/02* | (2006.01) |
| *A62B 1/14* | (2006.01) |
| *A63B 29/02* | (2006.01) |
| *A62B 35/00* | (2006.01) |

(52) **U.S. Cl.**
CPC . *A63B 27/02* (2013.01); *A62B 1/14* (2013.01); *A63B 29/02* (2013.01); *A62B 35/00* (2013.01)

(58) **Field of Classification Search**
CPC .......... A62B 1/14; A62B 35/00; A63B 27/00; A63B 27/02; A63B 29/00; A63B 29/02; A63B 29/08; A63B 2225/09
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 428,812 | A * | 5/1890 | Johanson ............... A01M 31/02 182/135 |
| 3,357,520 | A * | 12/1967 | Foote ....................... A62B 1/14 182/5 |
| 3,814,210 | A * | 6/1974 | Hoffman ................. A62B 1/14 182/135 |
| 3,869,021 | A * | 3/1975 | Sutherland ........ A62B 35/0018 182/135 |
| 5,234,075 | A * | 8/1993 | Lowden ................... A62B 1/14 182/135 |
| 2013/0133981 | A1 | 5/2013 | Spraggon |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 2432541 A | 5/2007 |
| RU | 83011 | 5/2009 |
| SU | 298335 A1 | 4/1971 |
| WO | 2010097555 A1 | 9/2010 |
| WO | 2012022943 A1 | 2/2012 |

OTHER PUBLICATIONS

Extended European Search Report for EP 14795422, Mar. 18, 2016.

* cited by examiner

*Primary Examiner* — Colleen M Chavchavadze

(74) *Attorney, Agent, or Firm* — Standley Law Group LLP

(57) **ABSTRACT**

A secondary ascender system for use in rope climbing and with other rope climbing systems that provides a knee ascender permitting full range of motion and energy capture from two legs by encasing an interior portion of the length of an elastic cord used for tending the knee ascender within a load bearing member. The load bearing member connects a foot attachment to an ascender and transfers loads applied to the foot attachment and via the elastic cord during tending to the ascender to advance up the rope.

**20 Claims, 2 Drawing Sheets**





FIG. 1

FIG. 2



FIG. 3                    FIG. 4

US 9,352,190 B2

<div style="column: 1">

**1**

# KNEE ASCENDER ASSEMBLY FOR ROPE CLIMBING

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation and claims the benefit of International Application No. PCT/US2014/037000 filed 6 May 2014, which in turn claims priority to U.S. Provisional Application No. 61/820,006 filed 6 May 2013, the contents of each of which being hereby incorporated by reference as if fully recited herein.

### TECHNICAL FIELD

Exemplary embodiments of the present invention relate generally to mechanical devices and more specifically to devices used in rope climbing.

### BACKGROUND OF THE INVENTION

When climbing a static line, for example a rope secured to a high tree branch, it is common to use one or more ascenders to ease the effort required for climbing. "Ascenders" are generally devices that are threaded or otherwise engaged with a line and enable a climber to move the ascender along the length of the rope in one direction. Attempts to move the ascender in the opposing direction cause the ascender to lock in place, wherein a gripping mechanism operates to prevent movement in that direction, often by the engagement of teeth, ribs or other such protrusions on a cam or other movable surface that may optionally be spring biased. In this manner, ascenders can be advanced along the rope by pushing or pulling, and then bear the partial or full weight of the climber without moving in the opposite direction of travel along the rope. Auto-locking or auto-braking belay devices are also similar devices that allow movement in one direction, and while primarily used to travel down a rope, may sometimes be used in a similar manner to ascend.

It is common for climbers to utilize two ascenders in a climbing system in order to more easily and readily ascend one or more static lines. In those cases, the ascenders typically are advanced in an alternating fashion, with one ascender bearing the weight of the climber while the other ascender is being advanced. In this manner, a climber may reciprocally advance the ascenders to ascend a rope.

In many situations, rope climbers desire increased climbing speed and safety. For example, for professional climbers such as arborists and emergency rescue personnel, rope climbing is a task that may be performed many times on a daily or otherwise frequent basis. Under those circumstances, it may be desirable to decrease the effort required in rope climbing, and to increase the speed and safety of an ascent, potentially saving lives, time and effort over the long-term. Ascenders generally offer such gains, but current climbing systems suffer from several disadvantages that have not been addressed to date.

For example, many known systems include the use a foot ascender. A "foot ascender" commonly refers to an ascender device attached or integrated into the footwear of the climber. Thus, the use of foot ascenders results in one climber's foot—typically the dominate foot—being adjacent to the position of the ascender as the rope is climbed. The leg to which the foot ascender is attached is contracted to move the ascender along the rope, and then the leg is extended causing the foot ascender to lock in place, receiving the weight of the climber ascending the line. Two foot ascenders may be used, but is

</div>

<div style="column: 2">

**2**

considered impractical, however, in that any two ascenders on a single static line are not able to be advanced past each other without disengaging one of them from the line, resulting in a relatively unnatural gait. Therefore, several climbing systems have been developed to overcome this disadvantage in an effort to separate the ascenders on the line a distance that will allow for a greater range of movement.

One such example of a known climbing system is described by Spraggon in United States Publication No. 2013/0133981 A1. Spraggon describes the use of an ascender separated from a handle by a connection of a length such that, in use, the ascender is attached to a single rope suspended from above with a second, handled ascender below it. Both ascenders may include foot attachments depending therefrom into which the climber inserts a foot. The ascenders may each then be advanced along the rope in a reciprocating fashion wherein the climber pushes each ascender upwardly while shifting the climber's weight to the foot attachment corresponding to the opposite ascender. The climbing system described by Spraggon and other similar setups incorporating two hand ascenders, however, require that at least one, or both ascenders be attached to the rope at or above the climber's head or chest assembly, which poses significant safety problems to the climber. Furthermore, these systems require the climber to engage his or her hands with the handled ascenders during an ascent, fully occupying the hands.

Other known systems may combine a foot ascender with a handled ascender associated with a foot attachment depending therefrom, but do not overcome the safety issues presented by use on a rope above safety harness assembly tie-in point. The use of one hand and one foot ascender also generally does not provide for a completely hands-free experience, which is considered safer and more desirable. Furthermore, these and other types of unbalanced systems are a serious health concern in that their repetitive use leads to maladies such as hip dysplasia.

Current known systems that attempt to address these issues commonly utilize a foot ascender in combination with a knee ascender. A "knee ascender" refers generally to a device that includes an ascender with a foot attachment (e.g., a loop of rope) depending therefrom at such a length that, when a climber has both legs extended, the ascender portion of the knee ascender device is located at a position on the rope that is approximately level with the knee area of the opposing leg (wherein the foot ascender on that opposing leg remains at boot level). The distance from the foot to the knee approximates a comfortable distance such that the ascenders may be reciprocally advanced, thereby enabling a climber to "walk" up a rope. Knee ascenders typically must include a means for advancing or "tending" the device on the rope in the direction of travel, because there are no handled ascenders by which the climber may use his or her hand to manually advance the ascender.

There are several variations on the use of knee and foot ascender combination climbing systems known in the art. Some systems connect the ascender portion of the knee ascender device to the safety harness attachment point that is typically level with the chest area of the climber by way of an elastic connection. The elastic connection is entirely external to the rest of the knee ascender assembly. When the leg associated with the knee ascender is fully extended and weight-loaded, the elastic connection is under tension. The climber shifts advances the foot ascender along the line by raising the leg associated with the foot ascender, and then shifts his or her weight to that leg. The leg associated with the knee ascender is then raised, and the elastic connection contracts, thereby self-tending the knee ascender along up the

</div>

US 9,352,190 B2

<table>
<tr><td>3</td><td>4</td></tr>
</table>

rope. These systems, however, do not provide a climber with a full range of motion with regard to his or her legs, because the relatively short distance between the knee area and the chest area results in a tending force that is insufficient to fully advance the knee ascender.

Other systems have been developed to overcome this disadvantage, but none have been able to provide a climber with the use of the legs' full range of motion in a safe and desirable manner. Some climbers extend the length of the elastic connection by extending the connection up and around their neck and shoulders and connecting the end to the harness. This method presents seriously dangerous problems that can be fatal during a fall, and furthermore present an uncomfortable setup that may at the very least chafe and rub against the climbers' shoulders and neck area. Some known systems make use of a bulky pulley system that is integrated into the safety harness to loop the elastic connection around the chest assembly and back down to a lower connection point. These types of systems are bulky, add significant weight to climbing gear, and present multiple lengths of rope, line or cords that get in the way while climbing. Furthermore, they can be much more difficult to don prior to climbing or remove once the destination has been reached, causing significant time delays and safety concerns for regular climbers.

It is very desirable from a safety perspective for the loads experienced by climbing ropes to, under routine operation, not meet or exceed safety limits recommended by the manufacture. In the context of elastic cords for which repetitive elongation is expected, the desired length of elongation should be achieved under operating loads that are in a range that will not lead to unwanted or unsafe consequences, such as inelastic elongation, yield and the like. For elastic cords under such linear-elastic range loads, a greater overall length will permit a proportionally greater extension length, according to Hooke's Law. However currently known methods of increasing the expected elongation length of the elastic connection in knee ascenders (and hence the total travel available for the legs) are either grossly unsafe, or the solution results in many exposed lengths of elastic connection that can be cumbersome and unsafe.

It is therefore an unmet need in the prior art for a rope climbing device that provides a climber with the use of his or her full range of leg motion in connection with two ascenders, is compliant with all applicable safety standards, does not present chronic or long-term health issues such as hip dysplasia, is lightweight, allows a climber free use of both hands during ascent, has a minimal number of components that may impede free movement or catch on tools, branches, etc., and that decreases the effort required to climb while increasing productivity measures without presenting immediate health and safe risks. No known references, taken alone or in combination, are seen as teaching or suggesting the presently claimed apparatus for use in rope climbing.

## BRIEF SUMMARY OF THE INVENTION

Exemplary embodiments of the present disclosure pertain to devices, apparatuses and assemblies for use in rope climbing. An objective of the present invention is to provide an knee ascender apparatus having an elastic cord with a fixed end and a free end defining a length and a load bearing member having a hollow core open at an aperture, wherein the fixed end of the elastic cord is secured relative to the load bearing member, an interior portion of the length of the elastic cord extends from the fixed end through the hollow core to the aperture, and an exterior portion of the length of the elastic cord extends through the aperture to the free end external to the load bearing member. Exemplary embodiments are further provided with an ascender secured to the load bearing member adjacent to the aperture, and a foot attachment depending from the load bearing member.

A further object of the invention is to provide a knee ascender with a liner secured within the hollow core, thereby defining a cavity having an interior diameter and through which the interior portion of the elastic cord extends, the liner comprising an upper end and a lower end wherein the upper end is positioned in the aperture of the load bearing member. Some embodiments are provided wherein the liner is flexible and the cavity is incompressible.

In some embodiments the fixed end of the elastic cord may form a knot sized larger than the interior diameter of the liner, and be positioned outside of the cavity at the lower end of the liner, thereby securing the fixed end relative to the load bearing member at the lower end of the liner.

It is an object of the invention to, in some exemplary embodiments, wherein the aperture further comprises an unloaded diameter when the load bearing member is not loaded, and a loaded diameter when the load bearing member is loaded, the loaded diameter being less than the unloaded diameter due to stretching caused by a tensile load, to provide the knee ascender with a means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded. In some embodiments, the means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded is provided as a rigid end cap having an opening and fixed to the upper end of the liner and positioned within the aperture.

It is another object of the invention to provide a means for attaching the free end of the elastic cord to a harness. In some embodiments, the means for attaching the free end of the elastic cord to a harness is a boat snap tied to the free end of the elastic cord.

In other embodiments, the load bearing member is provided as a hollow braided rope, or a 12-strand hollow braided polyester weight bearing rope. Some embodiments are provided such that the load bearing member and the foot attachment are formed of a continuous braided rope.

It is an object of this invention to provide a knee ascender of the type generally described herein, being adapted for the purposes set forth herein, and overcoming disadvantages found in the prior art. These and other advantages are provided by the invention described and shown in more detail below.

## BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

Novel features and advantages of the present invention, in addition to those mentioned above, will become apparent to those skilled in the art from a reading of the following detailed description in conjunction with the accompanying drawings wherein identical reference characters refer to identical parts and in which:

FIG. 1 is a front view of a first embodiment of the secondary foot ascender;

FIG. 2 is a rear, partial sectional view of the embodiment shown in FIG. 1;

FIG. 3 is a perspective view thereof in an extended state when combined with an exemplary rope climbing setup; and

FIG. 4 is a retracted state thereof.

## DETAILED DESCRIPTION OF THE INVENTION

Referring to FIGS. 1 and 2, opposing views of an exemplary embodiment of the invention are depicted. FIG. 2 fur-

US 9,352,190 B2

5

ther includes a partial sectional view taken between the broken indicator lines. This exemplary embodiment of the invented knee ascender apparatus 2 illustrates the principles of the invention, and as will be understood by those skilled in the art, the invention may be practiced in other combinations, forms and variations according to the disclosure herein without departing from the scope of the invention.

The knee ascender 2 includes generally an elastic cord 4, a load bearing member 6, an ascender 8, and a foot attachment 10. The foot attachment 10 is depicted in this embodiment of the invented knee ascender 2 as an adjustable loop of rope. An optional protective sleeve 12 may also be positioned around the portion of the foot loop rope in this case to protect the rope from soiling, abrasion and other such negative occurrences. The foot attachment 10 connects the knee ascender 2 to the foot of the user, preferably opposite a foot ascender (e.g., see FIGS. 3 and 4). Any comparable or equivalent means or method of attachment may be utilized without departing from the scope of the invention, as the primary function of the foot attachment is to receive the weight of the climber during ascent and transfer it through the load bearing member and ascender to the static line.

The load bearing member 6 is generally a body of material that will sufficiently bear the weight of the climber and his or her gear safely during a climb and will transfer that weight from the foot attachment to the ascender supported by the static line being climbed. The load bearing member 6 will generally span a distance between the foot attachment 10 and the ascender 8, separating them roughly by the average distance from the foot to the knee. The embodiment shown in connection with FIGS. 1 and 2 has been found to apply to nearly the entire range of climber body types through the manufacture of two sizes: a large size that spaces the ascender 20 inches from the climber's boot, and a small size that spaces the ascender 17 inches from the boot. It should be understood that the distance between the foot attachment and the ascender is not considered limiting, as any desirable distance may be applied without departing from the scope of the invention.

It should also be noted that, in preferred embodiments, the foot attachment 10 and the load bearing member 6 may be formed of a continuous material for simplicity and cost savings. As will be described in further detail below, the preferred embodiment employs a 12-strand hollow braided polyester weight bearing climbing rope. However, it is sufficient for the purposes of this disclosure for those practicing and using the invention that the load bearing member be capable of bearing the desirable loads being exerted thereon, and that the foot attachment provide an attachment point for the climber's foot at a sufficient distance from the ascender.

The load bearing member 6 is a hollow structure, as illustrated in the section portion of FIG. 2. The load bearing member 6 is hollow in order to allow for the elastic cord 4 to be encased therein, providing for an unobtrusive, safe increase in the length of the elastic cord over the prior art systems. The elastic cord 4 has a fixed end 14 and a free end 16 defining a length therebetween. The length of the elastic cord can be viewed generally as being the sum of two portions: an interior portion 18 and an exterior portion 20. The interior portion 18 is encased generally within the body of the device and the exterior portion 20 is external to the body. It is intended for the elastic cord 4 to stretch under normal operating loads, and therefore the division of its length into these two portions 18, 20 is not necessarily constant. However, some part of the elastic cord 4 is always encased within the body of the invention during normal use as will be described in more detail below. This feature is considered to be a sig-

6

nificant improvement over the prior art because it allows for a greater length of elastic cord to be used to self-tend the device without creating dangerous circumstances for the climber. Note also that references to cord, rope and line herein should be taken as interchangeable terms unless otherwise specifically stated herein, and are not meant to be limiting.

The interior portion 18 of the elastic cord 4 is contained within a load bearing member 6 of the knee ascender 2. The load bearing member 6 is the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment 10, transfers the load to the ascender 8 supported on the static line. The fixed end 14 of the elastic cord 4 is fixed in position with respect to the load bearing member 6, and may be fixed in any desirable position on or in the load bearing member 6 so as to achieve the total elastic cord length needed. In one exemplary embodiment, the fixed end 14 of the elastic cord 4 is configured as a knot 22, thereby securing the fixed end 14 relative to load bearing member 6 at a position just above the foot attachment 10. It should be understood that the position shown should not be considered limiting, and that other positions are considered comparable for the purposes of this disclosure, so long as an interior portion of the elastic cord is contained within the load bearing member. For example, the fixed end of the elastic cord could protrude from the load bearing member at any position along its length, and be knotted, tied, clamped or other such like method used to secure its position.

An aperture 24 in the load bearing member 6 is provided through which the elastic cord 4 may transition from inside of the knee ascender body to the exterior. For the purposes of this disclosure, the aperture 24 delineates the interior 18 and exterior 20 portions of the overall length of the elastic cord 4. In other words, the aperture 24 provides an opening to the hollow core (e.g., 26) of the load bearing member. As mentioned, the fixed end 14 of the elastic cord 4 is secured relative to the load bearing member 6. The interior portion 18 of the length of the elastic cord 4 extends from the fixed end 14 through the hollow core of the load bearing member 6 to the aperture 24. The exterior portion 20 of the length of the elastic cord 4 extends through the aperture 24 to the free end 16 of the elastic cord 4 external to the load bearing member 6.

The ascender 8 is secured to the load bearing member 6 adjacent to the aperture 24. In a preferred embodiment, in which the load bearing member 6 is a made of a hollow braided rope, the ascender 8 may be spliced into the braided rope near and adjacent to the aperture 24 to sufficiently secure it thereto. For example, loops 28 and 30 depict upper and lower splice loops, respectively, coupling the ascender 8 to the load bearing member 6.

The free end 16 of the elastic cord 4 is attached to an attachment point on a climber's harness during use. The free end 16 may be tied directly onto such an attachment point for example, or a quick connection-type device may be tied, stitched or otherwise coupled to the free end 16 so as to provide a means for attaching the free end of the elastic cord to a harness. A preferred embodiment includes the use of a boat snap device 32 tied thereto for quick connection of the invented knee ascender 2 to the safety harness assembly chosen by the user.

One optional means of affixing the fixed end 14 relative to the load bearing member 6 is considered a preferred means because it provides strength and rigidity to the load bearing member 6 while also protecting the elastic cord 4 from friction damage. In that case, a liner 34 may be secured within the hollow core 26 of the load bearing member 6. The liner 34 defines a cavity having an interior diameter and has an upper end and a lower end. The interior portion 18 of the elastic cord

7

4 extends through the cavity. The liner 34 is secured within the load bearing member 6 such that its upper end is positioned at or in the aperture 24. The cavity is aligned with the aperture such that the elastic cord passes therefrom to exit the liner 34 and the load bearing member 6. A knot 22 formed outside of the cavity at the lower end may be used secure the fixed end 14 of the elastic cord 4 relative to the load bearing member 6 if the knot 22 is sized larger that the interior diameter of the cavity. It is also preferred but optional that the liner 34 be formed of a flexible material with reference to unbalanced forces along and perpendicular to its axis (i.e., bowable), but material that is also relatively incompressible in cross section and longitudinally so as to prevent pinching and general impedance of the elastic cord 4 during use. Relative incompressibility in the longitudinal direction is considered desirable where the fixed end of the elastic cord is positioned at the lower end of the liner, in order for the tending forces exerted on the liner to be fully transmitted to advance the ascender up the static line. It is known, for example, that polyester braided weight bearing rope elongates under load and shrinks in diameter. The liner 34 is preferred as a means of preventing such compressive forces from reaching the elastic cord 4, which would prevent smooth self-tending of the knee ascender 2.

Additionally, where hollow braided rope is used to construct the load bearing member 6, the aperture 24 may have the tendency to shrink in diameter in the same manner when the load bearing member 6 experiences a load. This is preferable in that, for embodiments utilizing a liner, the cross sectional shrinkage will operate to secure the liner within the rope when the knee ascender is under tension. That is, the aperture 24 will have an unloaded diameter, or aperture size, when the load bearing member 6 or knee ascender 2 generally are not loaded with weight. It will have a second, smaller loaded diameter when the load bearing member 6 and knee ascender 2 generally are loaded with weight. To avoid pinching at the aperture 24 due to the tensile load applied to the load bearing member 6, and further to avoid rope-on-rope friction damage as the elastic cord 4 extends and retracts during use, an optional but preferable means for maintaining the unloaded diameter of the aperture 24 when the load bearing member 6 is loaded may be included as well. One preferable means consists of the use of an end cap 36 formed of a rigid, low-friction material having an opening. The end cap 36 is affixed to the upper end of the liner and positioned within the aperture. The opening of the end cap 36, the aperture, 24 and the cavity of the liner 34 are aligned to allow free extension and retraction of the elastic cord 4. In some embodiments, the end cap 36 may be formed of a material similar to that of the liner 34, and may be formed as a unitary piece with the liner itself, or may be affixed by a strong adhesive applied between the liner 34 and the end cap 36, for instance.

In preferred embodiments, the load bearing member 6 and the foot attachment 10 are formed of a single, continuous length of braided rope. In one embodiment, the continuous length of rope begins at a first end 38 and ends at a second end 40. Each end 38 and 40 may be knotted and melted or otherwise safely terminated. The liner 34 is inserted with the knotted 22 fixed end 14 of the elastic cord 4 to the first end 38 of the continuous braided rope. The upper end of the liner 34 and the end cap 36 are positioned at an aperture 24 formed in the wall of the rope and it is spliced into the ascender 8 as the rope is doubled back down upon itself. After enclosing the first end 38 of the rope, the foot attachment 10 is formed by forming an adjustable foot loop and splicing the tail of the rope just before the second end 40 thereof at 42.

8

Turning to FIGS. 3 and 4, two states of use of an exemplary embodiment of the invention are depicted in perspective views. In the first, the climber 50 generally has both the left 52 and right 54 legs extended. An exemplary embodiment of the invented knee ascender 2 as described in connection with FIGS. 1 and 2 is in place on the left leg 52 and a common boot ascender 56 is in place on the right leg 54. A safety harness 58 with a chest hitch assembly 60 is worn by the climber 50. The free end of the elastic cord 4 is attached to the chest hitch assembly 60 with a boat snap 32 tied thereto. The static line 62 depends from above and down through the chest hitch assembly 60, the ascender 8 component of the knee ascender 2, and the boot (foot) ascender 56. The two ascenders 8 and 56 are spaced apart about the distance from the foot to the knee, as previously discussed, creating ample distance between the ascenders, thus resulting in full freedom of leg movement for the climber 50.

Note that there are many climbing harness configurations in use today, and that the harness 58 and hitch assembly 60 shown merely depict an illustrative version. Various life support systems, harnesses, hitch assemblies, etc. may be used in connection with the invention disclosed herein without departing from the scope, making the invented knee ascender quite versatile.

FIG. 3 illustrates a fully extended state of the knee ascender 2, in which the elastic cord 4 is shown fully extended. The greatest portion of its length exists in this state as the exterior portion, positioned external to the load bearing member 6. From the extended state of the knee ascender 2, the climber 50 may lift his or her left leg 52 to the position shown in FIG. 4. The elastic cord 4 has contracted as the climber's weight was shifted to the right leg 54, drawing the fixed end encased within the load bearing member 6 at the lower end of the liner upward toward the chest assembly 60. The liner and load bearing member 6 have transferred the compressive force to advance the ascender 8 up the rope 62. The climber 50 may now shift his or her weight back to the left leg 52, which will begin to straighten as the right leg 54 is drawn up toward the climber's body, similarly advancing the boot ascender 56 up the rope 62. In this manner, the invention may be used to "walk" up a rope with speed, decreased effort, and increased comfort while remaining safe and unencumbered by burdensome gear and bulky equipment.

Any embodiment of the present invention may include any of the optional or preferred features of the other embodiments of the present invention. The exemplary embodiments herein disclosed are not intended to be exhaustive or to unnecessarily limit the scope of the invention. The exemplary embodiments were chosen and described in order to explain some of the principles of the present invention so that others skilled in the art may practice the invention. Having shown and described exemplary embodiments of the present invention, those skilled in the art will realize that many variations and modifications may be made to the described invention. Many of those variations and modifications will provide the same result and fall within the spirit of the claimed invention. It is the intention, therefore, to limit the invention only as indicated by the scope of the claims.

What is claimed is:

1. An apparatus for use in rope climbing comprising:
   an elastic cord having a fixed end and a free end defining a length;
   a load bearing member having a hollow core open at an aperture, wherein the fixed end of the elastic cord is secured relative to the load bearing member, an interior portion of the length of the elastic cord extends from the fixed end through the hollow core to the aperture, and an

US 9,352,190 B2

9

exterior portion of the length of the elastic cord extends through the aperture to the free end external to the load bearing member;

an ascender secured to the load bearing member adjacent to the aperture; and

a foot attachment depending from the load bearing member.

**2**. The apparatus of claim **1**, further comprising a liner secured within the hollow core, thereby defining a cavity having an interior diameter and through which the interior portion of the elastic cord extends, the liner comprising an upper end and a lower end wherein the upper end is positioned in the aperture of the load bearing member.

**3**. The apparatus of claim **2**, wherein the fixed end of the elastic cord comprises a knot sized larger than the interior diameter of the liner and positioned outside of the cavity at the lower end of the liner, thereby securing the fixed end relative to the load bearing member at the lower end of the liner.

**4**. The apparatus of claim **2**, wherein the liner is flexible and the cavity is incompressible.

**5**. The apparatus of claim **2**, wherein the aperture further comprises an unloaded diameter when the load bearing member is not loaded, and a loaded diameter when the load bearing member is loaded, the loaded diameter being less than the unloaded diameter due to stretching caused by a tensile load, the apparatus further comprising a means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded.

**6**. The apparatus of claim **5**, wherein the means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded comprises a rigid end cap having an opening and fixed to the upper end of the liner and positioned within the aperture.

**7**. The apparatus of claim **1**, further comprising a means for attaching the free end of the elastic cord to a harness.

**8**. The apparatus of claim **7**, wherein the means for attaching the free end of the elastic cord to a harness comprises a boat snap tied to the free end of the elastic cord.

**9**. The apparatus of claim **1**, wherein the load bearing member comprises a hollow braided rope.

**10**. The apparatus of claim **1**, wherein the load bearing member comprises a 12-strand hollow braided polyester weight bearing rope.

**11**. The apparatus of claim **1**, wherein the load bearing member and the foot attachment are formed of a continuous braided rope.

**12**. An apparatus for use in rope climbing comprising:

an elastic cord having a fixed end and a free end defining a length;

10

a liner comprising an upper end and a lower end and defining a cavity having an interior diameter, wherein the fixed end of the elastic cord is secured at the lower end of the liner, an interior portion of the length of the elastic cord extends from the fixed end through the liner to the upper end, and an exterior portion of the length of the elastic cord extends through the upper end to the free end external to the liner;

a load bearing member having an aperture and encasing the liner such that the upper end of the liner is positioned in the aperture;

an ascender secured to the load bearing member adjacent to the aperture; and

a foot attachment depending from the load bearing member.

**13**. The apparatus of claim **12**, wherein the fixed end of the elastic cord comprises a knot sized larger than the interior diameter of the liner and positioned outside of the cavity at the lower end of the liner.

**14**. The apparatus of claim **12**, wherein the liner is flexible and the cavity is incompressible.

**15**. The apparatus of claim **12**, wherein the aperture further comprises an unloaded diameter when the load bearing member is not loaded, and a loaded diameter when the load bearing member is loaded, the loaded diameter being less than the unloaded diameter due to stretching caused by a tensile load, the apparatus further comprising a means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded.

**16**. The apparatus of claim **15**, wherein the means for maintaining the unloaded diameter of the aperture when the load bearing member is loaded comprises a rigid end cap having an opening and fixed to the upper end of the liner and positioned within the aperture whereby the opening, aperture and cavity are aligned.

**17**. The apparatus of claim **12**, further comprising a means for attaching the free end of the elastic cord to a harness.

**18**. The apparatus of claim **17**, wherein the means for attaching the free end of the elastic cord to a harness comprises a boat snap tied to the free end of the elastic cord.

**19**. The apparatus of claim **12**, wherein the load bearing member and the foot attachment are formed of a continuous braided rope.

**20**. The apparatus of claim **19**, wherein the continuous braided rope comprises a 12-strand hollow braided polyester weight bearing rope.

\* \* \* \* \*

# EXHIBIT B

**uspto** UNITED STATES
PATENT AND TRADEMARK OFFICE

## Assignment abstract of title for Application 14717535

| Invention title/Inventor | Patent | Publication | Application | PCT | International registration |
|---|---|---|---|---|---|
| KNEE ASCENDER ASSEMBLY FOR ROPE CLIMBING | 9352190 | 20150251057 | 14717535 | | |
| Michael Allen Frankhauser | May 31, 2016 | Sep 10, 2015 | May 20, 2015 | | |

## Assignments (1 of 1 total)

### Assignment 1

| Reel/frame | Execution date | Date recorded | Properties | Pages |
|---|---|---|---|---|
| 043749/0056 | Aug 14, 2017 | Sep 01, 2017 | 2 | 8 |

**Conveyance**
ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignors**
FRANKHAUSER, MICHAEL ALLEN, MR.

**Correspondent**
JOSEPH A. SEBOLT
4940 MUNSON STREET NW
AEGIS TOWER, SUITE 1100
CANTON, OH 44718-3615

**Assignee**
WEAVER LEATHER, LLC
P.O. BOX 68
7540 COUNTY ROAD 201
MT. HOPE, OHIO 44660-0068

# EXHIBIT C

**Climbing Innovations .com**

CATALOG   👤   🔍   🛒 CART

## ASCENDER RED/BLACK

$139.95 $179.99

o The fastest, lightest, most efficient and responsive knee ascender on the market.

o Patent pending double bungee configuration, makes for strong, fast and responsive ascender advancement.

o Made from durable quality materials, with a customized ascender and manufactured on a computerized rope sewing machine.

o Quality bungee with a single pure rubber core and a durable Dyneema cover. Replacement in a few minutes. (If you ever do wear it out.)

o Works with both ClipN-style or regular climbing boots with nothing additional to buy.

o No extra moving parts to wear out, add weight or slow you down.

o The footloop can stay on your boot. Makes for fast and easy, on and off of the SAKA carabiner, and also minimized storage space requirements.

o Adjustable in seconds to reach any desired tending point.

Tips For Use

1. Leave the footloop on your boot, even when you're not climbing. Think about securing the elastic part with a couple of laces.

2. Store it by attaching it across your back or with a half roll and twist in a ditty bag or use the convenient storage point on the ascender.

# EXHIBIT D

# 3442997



**SAND&SEBOLT**

A LEGAL PROFESSIONAL ASSOCIATION

AEGIS TOWER
SUITE 1100
4940 MUNSON STREET, NW
CANTON, OHIO  44718-3615

PATENT, TRADEMARK, COPYRIGHT LAW
& RELATED LITIGATION

JOSEPH A. SEBOLT
LAURA L. BEOGLOS
HOWARD L. WERNOW
NICHOLAS A. MIHALIC

MICHAEL SAND
JAMES F. McCARTHY, III
Of Counsel

TELEPHONE: (330) 244-1174
FAX: (330) 244-1173
E-MAIL: INFO@SANDANDSEBOLT.COM

FIONA H. FERGUSON
Patent Agent

October 25, 2017


Mr. Richard Mumford                           **VIA E-MAIL**
CLIMBING INNOVATIONS                          richard@climbinginnovations.com
6328 Cedarcrest Road NW
Acworth GA 3010

RE:   **Patent Infringement Investigation - Richard Mumford - Climbing Innovations - S.A.K.A. Self Advancing Knee Ascender**
Our File:  2514108US2AI

---

Dear Mr. Mumford:

We represent Weaver Leather, LLC in intellectual property matters, i.e. patents, trademarks, copyrights, and related matters.  Our client is the owner of U.S. Patent No. 9,352,190 titled KNEE ASCENDER ASSEMBLY FOR ROPE CLIMBING.  A copy of this patent is enclosed for your convenience.

We understand that you are already aware of our client's patent rights having had previous conversations with the previous patent owner.  Our client has learned that you have continued to manufacture, use, offer for sale, or sell product that may be affected by the claims of our client's patent.  We believe it would be beneficial for all concerned to open a dialog with you now before any additional products are manufactured and sold with improper use of our client's intellectual property rights.  Weaver Leather, LLC is a well-established company which has invested considerable time and money in the development of its patent rights and simply cannot allow the value of its patent rights to be diminished by others.  We presume that you respect the intellectual property rights of others and will work with us to resolve this situation in a friendly manner.

Accordingly, we respectfully request that you immediately discontinue all sales and marketing efforts of this product.  Also, please advise us as to how long you have been marketing this product, the geographic area in which you marketed the product, and whether you have applied for patent protection in any country.  Your anticipated cooperation in addressing this situation amicably is appreciated.

Page 2

Please do not misunderstand our client's willingness to resolve this situation amicably as any waiver of our clients resolve. Our client stands ready, willing, and able to take whatever actions are necessary in order to protect its intellectual property rights. As such, we would appreciate receiving a substantive response in ten (10) business days of this correspondence.

Sincerely,

SAND & SEBOLT

By: Joseph A. Sebolt

JAS/cac
Enclosure